## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MARC S. BARNES, d/b/a PARK AT 14TH,

Plaintiff,

v.

DISTRICT OF COLUMBIA, *et al.*,

Defendants.

Civil Action No. 15-2069 (BAH)

Chief Judge Beryl A. Howell

## MEMORANDUM OPINION

The plaintiff, Marc S. Barnes, brought this lawsuit against the defendants, the District of Columbia (the "District") and D.C. Metropolitan Police Department ("MPD") Sergeant Jonathan Clingerman, alleging violations of his constitutional and common law rights. *See* Compl., ECF No. 1. The plaintiff's claims arise from his arrest and prosecution for second-degree theft after a would-be patron at the plaintiff's night club accused the plaintiff of confiscating and retaining her identification. *See* First Amended Complaint ("FAC") ¶¶ 43, 60–85, ECF No. 12. The defendants have moved to dismiss the plaintiff's First Amended Complaint on the ground that the plaintiff has failed to state any claim to relief. *See* Defs.' Mot. Dismiss at 1, ECF No. 13. For the reasons set forth below, the plaintiff's federal claims will be dismissed, and the plaintiff's state claims will be dismissed without prejudice.

## I.      BACKGROUND

The facts below, taken from the First Amended Complaint, will be accepted as true for the purposes of the pending motion. At the time of the events underlying this action, the plaintiff operated The Park at 14th, a night club and restaurant located in the District of Columbia. FAC ¶¶ 4, 7. Under the laws of the District of Columbia, the plaintiff is required to "take measures to

1

ensure that alcoholic beverages are not sold or consumed by minors," "provide a safe and secure environment for the public," and "avert conditions that cause a public nuisance or breach of the peace." *Id.* ¶ 7.

Shortly after midnight on August 8, 2014, a group of three people attempted to enter the plaintiff's night club, where a doorman required them to "present a valid form of identification." *Id.* ¶¶ 8–9. As to one of these three would-be entrants ("Patron 1"), the doorman determined that the photo on her presented identification, a driver's license issued to Fiona Weeks by the Republic of Liberia, was not a photo of her. *Id.* ¶ 10. Failing to produce any other valid form of identification, Patron 1 was denied entrance. *Id.* ¶ 11. After "several unsuccessful attempts to bribe the doorman" into letting Patron 1 into the club, the group left without requesting the return of the license. *Id.* ¶¶ 13–14.

Then, on or about August 10, 2014, Patron 1 returned to the plaintiff's night club, along with two new companions, believed to be Vinise Weeks and Fiona Weeks. *Id.* ¶¶ 15, 39. The three women entered the club, at which time a manager at the club recognized Patron 1 from two days earlier and "immediately instructed security to confirm that [Patron 1] had gained lawful entry to the club." *Id.* ¶¶ 16–17. Patron 1 produced a residential permit issued to Fiona Weeks by the Republic of Liberia, and security personnel determined that the photo was not a photo of Patron 1. *Id.* ¶¶ 19–20. Patron 1 was not able to produce another form of identification when asked and was then asked to leave the club, which she did, without requesting the return of the permit. *Id.* ¶¶ 21–22.

According to the plaintiff, security personnel also asked Vinise and Fiona Weeks to leave because they "were complicit in helping [an] underage female gain unlawful entry into the club." *Id.* ¶ 24. The two "caused a disturbance and refused to leave the club," and the plaintiff was

summoned to address this disturbance. *Id.* ¶¶ 25–26. As the disturbance then escalated, the plaintiff "requested assistance from Officer Gonzalez, a member of his security team," and a member of the MPD detailed to the club that evening. *Id.* ¶¶ 27–29. The plaintiff explained to the two women that "they had been asked to leave the club because . . . they participated in an unlawful act that caused an underage person to gain unlawful entry to a night club" and rejected their pleas to remain in the club. *Id.* ¶¶ 30–32. When Fiona Weeks demanded the return of her permit, which had been confiscated from Patron 1, the plaintiff refused, advising Fiona Weeks that the permit "would be returned to the issuing authority to ensure that it would be returned to the true owner" in conformity with "the club's policy in handling fraudulent uses of valid forms of ID." *Id.* ¶¶ 33–34. After exchanging harsh words with the plaintiff and Officer Gonzalez, the two women left the area. *Id.* ¶¶ 35–37.

One month later, on or about September 10, 2014, two officers from the MPD arrived at the plaintiff's night club and asked the plaintiff for the identification belonging to Fiona Weeks, explaining that she had "filed a claim stating that her ID was taken from her by [the] plaintiff and [the] plaintiff refused to return the ID to her because he thought the ID was fake." *Id.* ¶ 43. The plaintiff told the officers that the permit was no longer at the club because the club "does not store 'lost and found' items beyond two weeks." *Id.* ¶¶ 44–45. The plaintiff also told the officers that "Fiona Weeks had knowingly and willfully given the [p]ermit to [an] underage female to facilitate [the latter's] illegal entry" to the club. *Id.* ¶¶ 48–49. The plaintiff further explained that the Permit "was confiscated only to avoid its further use in fraudulent activity." *Id.* ¶ 50. The plaintiff also assured the officers "that the authenticity of the Permit as a valid form of ID was never questioned by the [club] as alleged by Fiona Weeks." *Id.* In response, the officers told the plaintiff that "he had no legal right to confiscate or shred any form of

identification even where the ID is clearly fake or being used as ID by someone other than the true owner" and directed the plaintiff to "involve the MPD when confronted with incidents of identity theft and fraud." *Id.* ¶ 51. The plaintiff told the officers that he had in fact requested assistance from Officer Gonzalez at one point during the events related to the confiscation of the permit. *Id.* ¶ 52. Nevertheless, the officers reported that the plaintiff was "illegally confiscating and destroying his patrons IDs." *Id.*

On October 28, 2014, almost three months after the plaintiff's interaction with Fiona Weeks at the club, defendant Sergeant Clingerman executed an affidavit in support of an arrest warrant for the plaintiff, and that same day, the plaintiff "was notified that an arrest warrant had been issued [by a magistrate] charging him with theft of property belonging to Fiona Weeks." *Id.* ¶¶ 60, 74. Prior to preparing the arrest warrant application, the plaintiff concedes that Sergeant Clingerman "spoke directly with the plaintiff," during which conversation the plaintiff told Sergeant Clingerman that the identification document in question "was not taken from Fiona Weeks," "had been used fraudulently by an underage young woman attempting to gain entry into [the plaintiff's] place of business," "was confiscated from the young woman only to avoid its further use in fraudulent activity," and that the "young woman did not object to the confiscation of the false ID," "Fiona Weeks had provided the fraudulent ID to the young woman" and an "MPD police officer worked at the plaintiff's place of business and was involved when the subject ID was confiscated." *Id.* ¶ 141. The plaintiff alleges, on information and belief, that the affidavit was executed "in retaliation of a complaint previously filed by [the] plaintiff against two of [Sergeant Clingerman's] fellow officers," and that Sergeant Clingerman "orally expressed his disdain for [the plaintiff] to various members of the MPD" before signing the Affidavit. *Id.* ¶¶ 67–68.

On or about October 31, 2014, the plaintiff was arrested on charges of second-degree theft and destruction of property in violation of D.C. Code § 22-3211, *id.* ¶ 77, when he "turned himself into the MPD," *id.* ¶ 76. After being "placed in handcuffs" and "detained for more than 12 hours," the plaintiff was released and ordered to report weekly to Pretrial Services Agency pending his trial date. *Id.* ¶ 79. The plaintiff complains that at Pretrial Services, he "was treated as a common criminal and subjected to public ridicule." *Id.* ¶ 81. A status hearing for the plaintiff's case was scheduled on November 24, 2014, but before that date, on November 21, 2014, the prosecutor entered a *nolle prosequi* for all criminal charges against the plaintiff, voluntarily discontinuing the prosecution. *Id.* ¶¶ 82–83.

According to the plaintiff, the MPD has consistently denied his requests for assistance in handling the identity theft and fraud he encounters as the owner and operator of a night club. *Id.* ¶ 53. Specifically, the plaintiff avers that the MPD "has never attempted to investigate cases of identity theft at the Park, nor has it sought the prosecution of any person(s) who have attempted or succeeded in entering the [Park] unlawfully," *id.* ¶ 57, despite the plaintiff's efforts "on a number of occasions personally [bringing] these problems to the attention of MPD supervisors, including the Commanding Officers of the Second District, [but] to no avail," *id.* ¶ 106. As a result, the plaintiff "faces daily the risk of losing his license to operate due to MPD's refusal to intervene in efforts to deter or even stop underage persons from attempting to enter the club illegally." *Id.* ¶ 58. Instead, prior to the events underlying the present action, the plaintiff states that, on at least one occasion, a police officer of the MPD "ordered [the] plaintiff to return an [identification ("ID")] to [a] potential patron even while acknowledging that the ID did not belong to the presenter." *Id.* ¶ 54.

On November 20, 2015, the plaintiff filed this lawsuit against the defendants, alleging violations of his constitutional and common law rights, Compl. at 1, and subsequently filed an amended complaint, which asserted eight counts: false arrest, in violation of the Fourth Amendment, under 42 U.S.C. § 1983, which provides a private right of action for violations of constitutional rights caused by persons acting under color of law, against defendant Sergeant Clingerman (Count I); malicious prosecution, in violation of the Fourth Amendment, under 42 U.S.C. § 1983, against defendant Sergeant Clingerman (Count II); deliberate indifference under 42 U.S.C. § 1983, against defendant District of Columbia (Count III); false arrest under state law against both defendants (Count IV); malicious prosecution under state law against both defendants (Count V); intentional infliction of emotional distress under state law against both defendants (Count VI); abuse of process under state law against both defendants (Count VII); and defamation *per se* under state law against both defendants (Count VIII). *See generally* FAC. The defendants' motion to dismiss the First Amended Complaint for failure to state a claim is now ripe for consideration.[1]

## II.   LEGAL STANDARD

### A.   Motion to Dismiss Under Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," to encourage brevity and, at the same time, "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007). The Supreme

---

[1]   In his opposition to the defendants' motion to dismiss, the plaintiff dropped three of the eight causes of action enumerated in the First Amended Complaint: the state law false arrest, abuse of process, and defamation *per se* claims (Counts IV, VII, and VIII). Pl.'s Mem. Supp. Opp'n Def.'s Mot. Dismiss ("Pl.'s Opp'n") at 16, 20, ECF No. 15. Accordingly, only Counts I, II, III, V, and VI are considered.

Court has cautioned that although "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Wood v. Moss*, 134 S. Ct. 2056, 2067 (2014) (quoting *Iqbal*, 556 U.S. at 678). A claim is facially plausible when the plaintiff pleads factual content that is more than "'merely consistent with' a defendant's liability," "allow[ing] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556); *see also Rudder v. Williams*, 666 F.3d 790, 794 (D.C. Cir. 2012). Although "detailed factual allegations" are not required to withstand a Rule 12(b)(6) motion, a complaint must offer "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action" to provide "grounds" of "entitlement to relief," *Twombly*, 550 U.S. at 555 (internal quotation marks omitted), and "nudge[] [the] claims across the line from conceivable to plausible," *id.* at 570. Thus, in considering a Rule 12(b)(6) motion, the "court assumes the truth of all well-pleaded factual allegations in the complaint and construes reasonable inferences from those allegations in the plaintiff's favor, but is not required to accept the plaintiff's legal conclusions as correct." *Sissel v. U.S. Dep't of Health & Human Servs.*, 760 F.3d 1, 4 (D.C. Cir. 2014) (citation omitted).

## B.   Qualified Immunity

In suits brought under 42 U.S.C. § 1983, "[t]he doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate

clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). The doctrine "gives government officials breathing room to make reasonable but mistaken judgments," and "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 744 (2011)). The defendant bears the burden of pleading and proving the defense of qualified immunity. *See Harlow v. Fitzgerald*, 457 U.S. 800, 812 (1982).

In determining whether a government official should be entitled to qualified immunity, the two pertinent questions are (1) "whether the facts that a plaintiff has alleged . . . or shown . . . make out a violation of a constitutional right," and (2) "whether the right at issue was 'clearly established' at the time of the defendant's alleged misconduct." *Pearson*, 555 U.S. at 232 (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Courts have "discretion to decide which of the two prongs of qualified-immunity analysis to tackle first." *Lash v. Lemke*, 786 F.3d 1, 5 (D.C. Cir. 2015) (quoting *al-Kidd*, 563 U.S. at 735).

## III.   DISCUSSION

The plaintiff's claims lend themselves to division into three categories. First, the plaintiff brings two federal claims, pursuant to 42 U.S.C. § 1983, against Sergeant Clingerman, alleging false arrest and malicious prosecution in violation of his Fourth Amendment rights. *See* FAC ¶¶ 86–101. Second, the plaintiff brings a single federal claim, also pursuant to 42 U.S.C. § 1983, against the District, alleging deliberate indifference to the aforementioned constitutional violations. *See* FAC ¶¶ 102–11. Third, the plaintiff brings two state claims against both defendants, alleging malicious prosecution and intentional infliction of emotional distress. *See* FAC ¶¶ 118–31. These three categories of claims will be addressed *seriatim* below.

A.      **The Plaintiff's Federal Claims Against Sergeant Clingerman Fail Because This Defendant Is Entitled to Qualified Immunity**

The plaintiff claims, in Count I, that he was falsely arrested "pursuant to a defective warrant which did not establish probable cause to believe that he committed theft." FAC ¶ 88. His federal malicious prosecution claim, in Count II, is also predicated on a purported lack of probable cause, alleging that the "charges [against him] were not based upon probable cause, but were maliciously initiated by defendant Clingerman pursuant to a legally deficient Complaint and Affidavit." *Id.* ¶ 97. As support for both of these claims, the plaintiff contends that there was no probable cause to believe he was involved directly in the alleged crime, Pl.'s Opp'n at 6, or "had the specific intent to commit the crime of theft," FAC ¶ 88; *see also* FAC ¶ 97. The defendants counter that Sergeant Clingerman is entitled to the defense of qualified immunity because this defendant "had probable cause to believe that [the plaintiff] intentionally deprived Ms. Weeks of the use and benefit of her property," in violation of D.C. Code § 22-3211. Defs.' Mem. P. & A. Supp. Defs.' Mot. Dismiss ("Defs.' Mem.") at 5, ECF No. 13. According to the defendants, none of the plaintiff's factual allegations regarding his involvement in the alleged criminal conduct or intent to commit a crime undermines the existence of probable cause. *Id.* at 5–6; Defs.' Reply Pl.'s Opp'n Defs.' Mot. Dismiss at 2–3, ECF No. 16. The defendants are correct.

The Fourth Amendment requires that an officer effecting an arrest or initiating prosecution have probable cause to do so. *See* U.S. CONST. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . ."). For this reason, whether an arrest or prosecution is constitutionally valid will often turn on whether probable cause existed. *See Beck v. Ohio*, 379 U.S. 89, 91 (1964) ("Whether [an] arrest was

constitutionally valid depends . . . upon whether, at the moment the arrest was made, the officers had probable cause to make it . . . ."); *Pitt v. District of Columbia*, 491 F.3d 494, 510 (D.C. Cir. 2007) ("[M]alicious prosecution is actionable under the Fourth Amendment to the extent that the defendant's actions cause the plaintiff to be 'seized' without probable cause."). Ordinarily, however, an officer is entitled to qualified immunity, regardless of whether probable cause existed in fact, "[w]here the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant." *Messerschmidt*, 565 U.S. at 546. In that circumstance, "the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner," as required for the defense of qualified immunity to apply. *Id.* As the Supreme Court has explained, "'in the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination' because 'it is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment.'" *Id.* at 547 (alterations omitted) (quoting *United States v. Leon*, 468 U.S. 897, 921 (1984)). Accordingly, given the issuance of a warrant by a magistrate in the instant case, the plaintiff wages an uphill battle in pressing his claims against Sergeant Clingerman.

"[I]n some circumstances," however, an "officer will have no reasonable grounds for believing that the warrant was properly issued." *Leon*, 468 U.S. at 922–23 (footnote omitted). For example, "if the magistrate or judge in issuing a warrant was misled" as to the existence of probable cause by information included or omitted from the supporting affidavit by the executing officer, or if the warrant was based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," an officer may be liable. *Id.* at 923 (quoting *Brown v. Illinois*, 422 U.S. 590, 611 (1975) (Powell, J., concurring in part)); *see*

*Messerschmidt*, 565 U.S. at 547 (discussing this "narrow exception" and noting "the threshold for establishing [it] is a high one, and it should be").[2]

In the instant case, the warrant and supporting affidavit executed by Sergeant Clingerman are referenced in the First Amended Complaint but not provided by any party. In any event, the plaintiff does not allege that the warrant was invalid on its face, but rather suggests that even though the warrant was facially valid, the supporting affidavit was somehow flawed as a result of misleading information or omissions material to the magistrate's probable cause determination. *See* Pl.'s Opp'n at 12 (averring "it was wrongfully indicated in the arrest warrant application Complaint" that Fiona Weeks's "International Passport" was "'wrongfully obtained and used' by" the plaintiff). Notwithstanding the vagueness of the plaintiff's allegations regarding the precise flaws alleged in the affidavit, review of the First Amended Complaint, which focuses on the lack of any probable cause, reveals ample information for resolution of the parties' contentions regarding Sergeant Clingerman's entitlement to the shield of qualified immunity. In other words, if the plaintiff's factual allegations, the truth of which are assumed, fail to show a lack of probable cause, the plaintiff will not have "ma[d]e out a violation of a constitutional right" as required by the first prong of the qualified immunity analysis to remove that defense's protection. *Pearson*, 555 U.S. at 232. Thus, while an officer may be entitled to qualified immunity even where probable cause is lacking, the existence of probable cause necessarily entitles him to that defense. In addition, as is explained *infra* Part III.B, if the plaintiff has failed to plead facts sufficient to show a violation of a constitutional right, the plaintiff's § 1983 claim against the District will also necessarily fail, obviating the need for the Court to consider other

---

[2]        While its decision in *Leon* addressed qualified immunity in the context of a suppression hearing, the Supreme Court has applied the same standard to an officer's request for an arrest warrant. *See Malley v. Briggs*, 475 U.S. 335, 344–45 (1986).

arguments of the parties regarding the District's liability.   Finally,  if probable  cause exists, the

plaintiff's  allegations  regarding Sergeant Clingerman's  malice  toward the  plaintiff,  *see* FAC ¶¶

67–68,  are  wholly  irrelevant.  *See Malley v. Briggs*, 475 U.S. 335, 341 (1986) (noting "an

allegation  of malice  is not sufficient  to defeat immunity  if [the official  acted in an] *objectively*

reasonable  manner"—as is plainly  the case where an officer acted in reliance  on probable  cause

(emphasis  added)).  For these reasons, probable  cause will now be assessed.

An arrest or prosecution  is supported  by probable  cause if, at the time of the arrest or

prosecution,  "the  facts and circumstances  within  [the officers']  knowledge  and of which they had

reasonably  trustworthy  information  were sufficient  to warrant a prudent man in believing  that the

petitioner  had committed  or was committing  an offense."  *Beck*, 379 U.S. at 91.[3]  Such a belief

need not be "correct  or more likely  true than false,"  *Texas v. Brown*, 460 U.S. 730, 742 (1983),

nor does probable  cause "require  the same type of specific  evidence  of each element of the

offense as would be needed to support a conviction,"  *Adams v. Williams*, 407 U.S. 143, 149

(1972).  Nevertheless,  "the police  cannot establish  probable  cause without at least *some* evidence

supporting  the elements  of a particular  offense, including  the requisite  mental state."  *Wesby v.

District of Columbia*, 765 F.3d 13, 19 (D.C. Cir. 2014) (emphasis  in original).

"To determine  whether [an officer] had probable  cause to believe  that [a plaintiff  was]

violating  District of Columbia  law, we look to District law to identify  the elements  of each of

those offenses."  *Id.*  To sustain a conviction  for second-degree  theft under D.C. Code § 22-3211,

the government  must prove (1) "that the accused 'wrongfully  obtained  the property  of

---

[3]      Given that the probable cause analysis focuses on the facts and circumstances known to the officer at the
time of the allegedly unconstitutional action, the analysis could differ for a plaintiff's false arrest and malicious
prosecution claims if new information came to light between the plaintiff's arrest and prosecution. *See Pitt*, 491
F.3d at 502.  In this case, however, the plaintiff has not alleged that new information surfaced between the two
events, and thus a single probable cause analysis for both claims is appropriate.

[another],'" (2) "that at the time he obtained it, he specifically intended 'either to deprive [another] of a right to the property or a benefit of the property or to take or make use of the property for [himself] . . . without authority or right,'" and (3) "that the property had some value." *Russell v. United States*, 65 A.3d 1172, 1177 (D.C. 2013) (quoting *Nowlin v. United States*, 782 A.2d 288, 291 (D.C. 2001)). In contending that Sergeant Clingerman lacked probable cause to arrest and prosecute the plaintiff, the plaintiff focuses on the first two elements of second-degree theft, arguing that he "himself was not at all involved in the actual confiscation and destruction of Fiona Weeks['s] documents" and that, in any event, the evidence did not demonstrate the plaintiff had the requisite specific intent. Pl.'s Opp'n at 6, 9. The plaintiff's own allegations set out in the First Amended Complaint undercut both of these arguments. *See Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011) (noting that a party may plead herself out of court by pleading facts that show she has no legal claim); *U.S. Gypsum Co. v. Indiana Gas Co.*, 350 F.3d 623, 626 (7th Cir. 2003) ("A litigant may plead itself out of court by alleging (and thus admitting) the ingredients of a defense.").

The plaintiff's first argument, that probable cause was lacking due to the lack of evidence showing the plaintiff was involved in the confiscation and destruction of Fiona Weeks's identification, seemingly ignores the multiple factual allegations to the contrary set out in the First Amended Complaint. For example, the plaintiff alleges that, in pursuing the arrest and prosecution of the plaintiff, Sergeant Clingerman relied on Fiona Weeks's complaint, which states "that her ID was taken from her by [the] plaintiff and [the] plaintiff refused to return the ID to her because he thought the ID was fake." FAC ¶ 43. The MPD's subsequent investigation of Fiona Weeks's police complaint, which included at least two conversations with the plaintiff, does not appear to have revealed any information suggesting that the plaintiff was not involved

in the confiscation of Fiona Weeks's property.  To the contrary, the facts in the plaintiff's First Amended Complaint reflect that he never denied having personal involvement with the confiscation and, instead, demonstrated ample knowledge of the events surrounding the identification's confiscation and retention at the Park. The plaintiff "informed the officers that the requested ID had in fact been used in the commission of a crime," "Fiona Weeks should be arrested because she was a willing participant in the criminal activity," "the Park gained possession of the [p]ermit only because it had been used fraudulently," "Fiona Weeks had knowingly and willfully given the [p]ermit to [an] underage female to facilitate [the latter's] illegal entry to the Park," "the subject ID was confiscated only to avoid its further use in fraudulent activity," and "he had in fact involved a member of the MPD, Officer Gonzales [sic] [,] on August 10, 2014, when the requested [p]ermit was confiscated." *Id.* ¶¶ 47–52; *see also id.* ¶ 141. Moreover, the plaintiff concedes that he interacted directly with Ms. Weeks on August 10, 2014, and at that time personally rejected her request for return of the identification document at issue. *Id.* ¶¶ 33–37, 39. The plaintiff further explained that the identification was not taken from Fiona Weeks and that the person from whom it was confiscated did not object to its confiscation. *See id.* ¶ 141. Far from denying involvement with the confiscation and retention of Ms. Weeks's property, the plaintiff's detailed recitation of the underlying events suggests direct involvement in that confiscation.  Accordingly, the plaintiff cannot establish a lack of probable cause to believe he was directly involved in the confiscation and retention of Ms. Weeks's property.

The plaintiff's second argument, that probable cause was lacking with respect to his specific intent to commit the crime, also fails in view of the facts alleged in the First Amended Complaint.  As explained above, to establish second-degree theft under D.C. Code § 22-3211,

the government must prove that the plaintiff "specifically intended 'either to deprive [another] of a right to the property or a benefit of the property or to take or make use of the property for [himself] . . . without authority or right.'" *Russell*, 65 A.3d at 1177 (quoting *Nowlin*, 782 A.2d at 291). The plaintiff contends that the facts alleged establish a lack of probable cause as to specific intent because they demonstrate that Ms. Weeks's identification was confiscated for the purpose of preventing its fraudulent use to obtain illegal entry into his club and, moreover, the identification was obtained "not from Ms. Weeks but from an under[age] would[-]be patron." *See* Pl.'s Opp'n at 9–10 (emphasis omitted). Thus, according to the plaintiff, "the confiscation of the subject items by the staff of [t]he Park had nothing to do with depriving Ms. Weeks [of] 'a right to the property or a benefit of the property.'" *Id.* at 9.

The plaintiff freely admits to his overarching motive to protect his business by disallowing entry of an underage would-be patron but, no matter how exculpatory this motivation, he also admits that, to this end, he acted in a manner designed to deprive Ms. Weeks of her lawful property by sanctioning the conduct of his employees and refusing to return the identification document to her. For example, as noted above, the plaintiff told Sergeant Clingerman and other officers that he believed Ms. Weeks to have engaged in a crime by providing her identification to an underage potential patron and that he confiscated the identification to prevent such use. *See* FAC ¶¶ 43–52, 141. These statements by the plaintiff, along with Ms. Weeks's complaint, more than suffice to "warrant a prudent man in believing" that the plaintiff intended to deprive another person of the identification without authority to do so. *Beck*, 379 U.S. at 91. While the plaintiff now "explain[s]" that "[h]e did not know Fiona Weeks at the time of this particular incident," and thus did not know at the time he denied her request for the identification's return that it rightfully belonged to her, Pl.'s Opp'n at 7, this

15

clarification is of no moment. The plaintiff has alleged no facts suggesting that he made any such clarification to Sergeant Clingerman or any other officer prior to his arrest and prosecution. More significantly, the plaintiff was without authority to take the identification—which, indisputably, did not belong to the plaintiff, or any other staff member at the Park—from any person, regardless of his subjective beliefs as to such person's legal entitlement to possess or use the identification, his intention of preventing identity fraud, or his concern that future illegal uses of the identification "could endanger his livelihood and liquor license." Pl.'s Opp'n at 10.[4]

For these reasons, Sergeant Clingerman is entitled to qualified immunity. The plaintiff has failed to allege facts demonstrating a lack of probable cause and thus has not alleged a violation of his constitutional rights. Accordingly, the plaintiff's § 1983 false arrest and malicious prosecution claims are dismissed.

## B.    The Plaintiff's Federal Claim Against the District Fails

The plaintiff alleges that the District "failed to properly supervise, train and discipline MPD officers with respect to proper procedures for handling and monitoring the confiscation and storage of false IDs use by underage[] would[-]be patrons of businesses serving alcoholic

---

[4]    Even assuming that the plaintiff had established a lack of probable cause such that he "ma[d]e out a violation of a constitutional right" in satisfaction of the first prong of the qualified immunity analysis, *Pearson*, 555 U.S. at 232, on the ground that the officer omitted information from the warrant application regarding the plaintiff's purported innocent intent to prevent illegal entry of underage persons to the Park, his claims would fail nonetheless on the second prong of the qualified immunity analysis, which requires that the constitutional violation be apparent to a reasonable officer in light of clearly established law. *See Pearson*, 555 U.S. at 231. Nothing in D.C. Code § 22-3211 suggests a defense for persons who intend to deprive another of her property but solely for the purpose of preventing another crime, and thus the plaintiff's contentions are, at least, of such "questionable relevance" to the probable cause determination that Sergeant Clingerman would nevertheless be entitled to qualified immunity. *Whitlock v. Brown*, 596 F.3d 406, 413 (7th Cir. 2010) (concluding officer entitled to qualified immunity on the second prong of the analysis where "a reasonable officer would not have known one way or the other whether the [plaintiffs' innocent] explanation for their conduct was material to the probable-cause determination for criminal conversion under Indiana law" in light of the "breadth of Indiana's criminal-conversion statute and the apparent absence of an implied-consent defense"); *see Leaver v. Shortess*, 844 F.3d 665, 669–70 (7th Cir. 2016) (finding that qualified immunity applied to bar § 1983 claim against the officer who sought an arrest warrant since it would not "have been clear to a reasonable officer that the omitted fact was material to the probable-cause determination" under Wisconsin's theft-by-lessee statute).

16

beverages." FAC ¶ 107.  Specifically,  the plaintiff  contends "the problem of under[age] young people attempting  to gain entry into nightclubs  is a major problem  in the city," and "[a]s a result of the lack of proper training  and supervision  of officers [on the part of the District], business owners, such as the plaintiff,  are wrongfully  exposed to the threat of arrest at the hands of an ill[-]trained,  ill[-]supervised  police officer."  *Id.* ¶¶ 108–09.  According to the plaintiff,  the District's alleged failure to train and supervise its police officers in this regard "constituted a custom and policy  in violation  of the constitutional  rights of the plaintiff  and the citizens of the District of Columbia  pursuant to 42 U.S.C. § 1983."  *Id.* ¶ 111.  In moving  to dismiss this claim, the defendants rely on the Supreme Court's decision in *Monell v. Dep't Soc. Servs.*, 436 U.S. 658 (1978), Defs.' Mem. at 6, which held that a municipality  may be liable under 42 U.S.C. § 1983 only where "the action that is alleged to be unconstitutional  implements  or executes a policy statement, ordinance, regulation,  or decision  officially  adopted and promulgated  by that [municipality's]  officers," *Monell*, 436 U.S. at 690, and asserts that the plaintiff  in this case has failed to allege facts sufficient to establish a "custom or policy,"  Defs.' Mem. at 7.

The defendants' contentions  need not be addressed.  "To hold the District liable, the [plaintiff]  must show (1) a Constitutional  violation,  and (2) that the District was responsible  for that violation."  *Doe v. District of Columbia*, 796 F.3d 96, 105 (D.C. Cir. 2015) (citing *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992)).  As explained  above, the plaintiff  has failed to plead facts sufficient to establish a lack of probable cause for issuance by a magistrate of an arrest warrant, and thus has not made out a violation  of any constitutional  right. *See supra* Part III.A.  Consequently, the plaintiff's  § 1983 claim against the District  must be dismissed.

**C.      The Court Lacks Jurisdiction Over the Remaining Claims**

Since the plaintiff's three federal claims must be dismissed, only state claims remain against the defendants.  While federal district courts have supplemental jurisdiction over state claims that "form part of the same case or controversy" as federal claims over which they have original jurisdiction, 28 U.S.C. § 1367(a), where the federal claims on which a federal court's jurisdiction relied have been dismissed, the court has discretion in deciding whether to retain supplemental jurisdiction over the remaining state claims, *see* 28 U.S.C. § 1367(c)(3); *Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1265–66 (D.C. Cir. 1995).  In exercising this discretion, the court balances the traditional "values of judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).  "[I]n the usual case in which all federal-law claims are dismissed before trial, the balance of [these] factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.* at 350 n.7; *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.").

In the instant case, each of these factors weighs in favor of dismissing the plaintiff's state claims without prejudice.  With respect to judicial economy, the plaintiff's remaining claims sound in District of Columbia law, with which the District of Columbia courts are more familiar, and this Court has yet to parse any of those claims.  Moreover, the District of Columbia courts are an equally convenient forum for these non-diverse parties, and principles of comity and fairness point in favor of allowing these claims to be pursued, if the plaintiff chooses, in the local court system. *See Shekoyan v. Sibley Int'l*, 409 F.3d 414, 424 (D.C. Cir. 2005) ("[T]he district court properly considered comity as well as fairness to the plaintiff in concluding that its

rejection of his non-federal claims would not adversely impact [the] plaintiff's ability to pursue those claims in the local court system." (internal quotation marks and alterations omitted)). Consequently, the remaining state claims are dismissed without prejudice.

## IV.    CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss is granted. The plaintiff's federal claims, in Counts I, II, and III, are dismissed, and the plaintiff's remaining state claims are dismissed without prejudice, pursuant to 28 U.S.C. § 1367(c)(3). The Clerk of the United States District Court for the District of Columbia is directed to close this case. An appropriate Order accompanies this Memorandum Opinion.

Date:  March 3, 2017

_____
BERYL A. HOWELL
Chief Judge